UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KATRINA PRISCILLA GASPAR,

      Plaintiff,

  v.                                           18-CV-6067
                                             DECISION AND ORDER
COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____

On January 22, 2018, the plaintiff, Katrina Priscille Gaspar, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On November 5, 2018, Gaspar moved for judgment on the pleadings, Docket Item 12; on February 11, 2019, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 17; and on March 4, 2019, Gaspar replied, Docket Item 18.

For the reasons stated below, this Court grants Gaspar's motion in part and denies the Commissioner's cross-motion.

## **BACKGROUND**

### I.    PROCEDURAL HISTORY

On April 24, 2015, Gaspar applied for disability insurance benefits. Docket Item 8 at 23, 99. She claimed that she had been disabled since July 1, 2014, due to small

fiber neuropathy, chronic fatigue, immunity disease, hyperthyroidism, neck pain, shoulder pain, vision issues, anxiety, and migraines. *Id.* at 23, 119.

On July 29, 2015, Gaspar received notice that her application was denied because she was not disabled under the Act. *Id.* at 111-15. She requested a hearing before an administrative law judge ("ALJ"), *id.* at 117-29, which was held on November 3, 2016, *id.* at 65. The ALJ then issued a decision on January 6, 2017, confirming the finding that Gaspar was not disabled. *Id.* at 36. Gaspar appealed the ALJ's decision, but her appeal was denied, and the decision then became final. *Id.* at 6-9.

## II. RELEVANT MEDICAL EVIDENCE

The following summarizes the medical evidence most relevant to Gaspar's objection. Gaspar was examined by several different providers but only one—Martin G. Lineham, Ph.D., a psychologist—is of most significance to this Court's review of Gaspar's claims.

### Martin G. Lineham, Ph.D., Psychologist

On October 6, 2016, Dr. Lineham completed a "mental medical source statement" for Gaspar. *Id.* at 420-24. Dr. Lineham noted that he had been treating Gaspar "approximately biweekly since 8/4/16 for individual psychotherapy." *Id.* at 420. He diagnosed Gaspar with anxiety disorder and depressive disorder, and he noted that she had chronic medical issues and chronic pain. *Id.* Dr. Lineham opined that Gaspar's global assessment of functioning ("GAF") score[1] was fifty-three at the time of the evaluation and that her highest GAF score over the past year was fifty-six. *Id.*

---

[1] The Global Assessment of Functioning ("GAF") scale, represents "the clinician's judgment of the individual's overall level of functioning. . . on a hypothetical continuum

2

Based on his examination, Dr. Lineham opined that Gaspar had several limitations on her mental and emotional abilities. First, Dr. Lineham found that Gaspar had no useful ability to (1) maintain attention for a two-hour segment of time; (2) complete a normal workday and workweek without interruptions from psychologically based symptoms; and (3) deal with normal work stress. *Id.* at 422. Second, Dr. Lineham found that Gaspar was "unable to meet competitive standards" in the following areas: (1) remembering work-like procedures; (2) maintaining regular attendance and being punctual within customary, usually strict tolerances; (3) sustaining an ordinary routine without special supervision; (4) working in coordination with or proximity to others without being unduly distracted; (5) performing at a consistent pace without an unreasonable number and length of rest periods; and (6) responding appropriately to changes in a routine work setting. *Id.* Third, Dr. Lineham found that Gaspar was "seriously limited" in her ability to (1) understand and remember very short and simple instructions; (2) carry out very short and simple instructions; (3) make simple work-related decisions; (4) accept instructions and respond appropriately to criticism from supervisors; and (5) get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. *Id.*

Dr. Lineham explained that "[a]ny ability [for Gaspar] to sustain meaningful work of any kind is compromised by significant anxiety, poor concentration, . . . difficulties

---

of mental-health illness" with a score of 100 being the highest functioning and a score of 1 being the lowest. Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32, 34 (4th ed., Text Revision 2000). Scores between fifty and sixty indicate "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., no friends, conflicts with peers or co-workers)." *Id.* at 34.

sustaining . . . focus due to depression symptoms[, and] difficulty dealing with complex medical symptoms including chronic . . . headaches." *Id.*

Based on all that, Dr. Lineham opined that Gaspar has "no useful ability to function" when it comes to understanding, remembering, and carrying out detailed instructions. *Id.* at 423. As to Gaspar's dealing with the stress of semiskilled or skilled work, Dr. Lineham said, Gaspar is "unable to meet competitive standards," and she is "seriously limited" in her ability to "set realistic goals or make plans independently of others." *Id.* Therefore, and not surprisingly, Dr. Lineham concluded that Gaspar's "significant distractibility and preoccupation with chronic medical symptoms, and demonstrated loss of train of thought at times under stress of any kind precludes working." *Id.* He said that "[e]xpecting her to do work would place an unfair burden on her." *Id.*

Dr. Lineham also found that Gasper's psychiatric conditions exacerbate her "experience of pain or any other physical symptom." *Id.* Specifically, he said that her significant anxiety and depression "create[] muscular tension which is likely to worsen already existing physical symptoms including chronic pain." *Id.* Dr. Lineham noted that although he "worked with her [only] since 8/2016 . . . [her] symptoms likely go back several years." *Id.* at 424.

### III. THE ALJ'S DECISION

In denying Gaspar's application, the ALJ evaluated Gaspar's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment.

4

§ 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any in the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987);

20 C.F.R. § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ determined at step one that Gaspar had not engaged in "substantial gainful activity" since July 1, 2014, the alleged onset date. Docket Item 8 at 25. At step two, the ALJ found that Gaspar had the following severe impairments: carpal tunnel syndrome, bilateral occipital neuralgia, major depressive disorder, and generalized anxiety disorder. *Id*. At step three, the ALJ determined that Gaspar did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 26.

In assessing Gaspar's RFC, the ALJ determined that Gaspar could perform light work as defined in 20 C.F.R. § 404.1567(b),[2] but with the following limitations:

> she is prohibited from climbing ladders, ropes, and scaffolds. She is further limited to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. She is also limited to occasional pushing, and pulling with the upper extremities and occasional overhead reaching bilaterally. Additionally, she would need to avoid concentrated exposure to extreme cold and to irritants such as fumes, odors, dust, gases, and poorly ventilated areas. She also would need to avoid slippery and uneven surfaces as well as hazardous machinery, unprotected heights, and open flames.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

> In addition, she is limited to doing simple routine, repetitive tasks. She is further limited to work in a low stress job defined as being free of fast-paced production requirements, no hazardous conditions, occasional decision-making, and occasional changes in the work setting. Finally, she is limited to only occasional interaction with coworkers, supervisors, and the general public.

*Id.* at 28.

At step four, the ALJ determined that Gaspar is unable to perform past relevant work. *Id.* at 34. But at step five, the ALJ determined that the Commissioner sustained her burden of establishing that Gaspar had the RFC to perform "jobs that exist in significant numbers in the national economy." *Id.* at 35. Specifically, the ALJ credited the vocational expert's testimony that Gaspar could perform jobs such as a photocopy machine operator, merchandise marker, or electrode cleaner. *Id.*

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [Social Security Administration ("SSA")] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)

(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d a 986.

## **DISCUSSION**

Gaspar argues that the ALJ erred in his evaluation of her treating physicians' opinions. Docket Item 12-1 at 19-26. Specifically, she argues that the ALJ failed to comply with the procedural mandates of the treating physician rule when he assigned weight to the opinions of three of her treating physicians including Dr. Lineham. *Id*. Gaspar also argues that the ALJ failed to properly evaluate her physical impairments that stem from her migraines and neuropathy. *Id*. at 26-30.

"Social Security Administration regulations, as well as [Second Circuit] precedent, mandate specific procedures that an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion." *Estrella v. Berryhill*, __ F.3d __, __, 2019 WL 2273574 at *2 (2d Cir. 2019). "First, the ALJ must decide whether the opinion is entitled to controlling weight." *Id*. "The opinion of a claimant's treating physician as to the nature and severity of an impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and it is not inconsistent with the other substantial evidence in the case record." *Id*. (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).

8

"Second, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it." *Id.* "In doing so, it must 'explicitly consider' the following, nonexclusive '*Burgess* factors': '(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Id.* (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). "At both steps, the ALJ must 'give good reasons in its notice of determination or decision for the weight it gives the treating source's medical opinion.'" *Id.* (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

"An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight at step two is a procedural error." *Id.* at *3. "If 'the Commissioner has not otherwise provided 'good reasons' for its weight assignment,' [courts] are unable to conclude that the error was harmless and consequently remand for the ALJ to 'comprehensively set forth its reasons.'" *Id.* (quoting *Halloran*, 362 F.3d at 33).

In this case, the ALJ addressed but discounted Dr. Lineham's opinion:

> Dr. Lineham opined that the claimant's ability to remember work procedures, maintain attention for two hour segment, sustain ordinary routine, and work in coordination with others without being distracted, perform at a consistent pace, and respond to changes in the work setting were unable to meet competitive standards (Exhibit 15F, p. 4).
>
> Dr. Lineham also opined that the claimant's ability to deal with stress, interact with the public, and maintain socially appropriate behavior were unable to meet competitive standards. (Exhibit 15F, p. 5). Dr. Lineham further opined that the claimant had serious limitations on her ability to remember simple instructions, make simple work-related decisions, accept criticism from supervisors, get along with coworkers, and set realistic goals. (Exhibit 15F, p. 4-5). However, Dr. Lineham's opinion is based on a very short and recent treatment history that began in August 2016. (Exhibit 15F, p. 6). Therefore, I assign very little weight to the opinions of Dr. Lineham.

Docket Item 8 at 33.

Because Dr. Lineham is a psychologist who treated Gaspar on a regular, biweekly basis for several months, he qualifies as a treating source. *See* 20 C.F.R. § 404.1527(a)(2).[3] So even if substantial evidence supported the ALJ's decision to assign less-than-controlling weight to Dr. Lineham's opinions, the ALJ "failed to 'explicitly consider' the [second, third, and fourth] *Burgess* factor[s] . . . before weighing

---

[3] A treating source is a claimant's "own acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1527(a)(2). "Generally, [SSA] will consider that [a claimant has] an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that [the claimant] see[s], or [has] seen, the source with a frequency consistent with acceptable medical practice for the type of treatment and/or evaluation required for [the claimant's] medical conditions(s)." *Id.* The agency "may consider an acceptable medical source who has treated or evaluated [a claimant] only a few times or only after long intervals (e.g., twice a year) to be [a] treating source if the nature and frequency of the treatment or evaluation is typical for [the claimant's] condition(s)." *Id.* SSA "will not consider an acceptable medical source to be [a claimant's] treating source if [the claimant's] relationship with the source is not based on [the claimant's] medical need for treatment or evaluation, but solely on [the claimant's] need to obtain a report in support of [his or her] claim for disability." *Id.* "In such a case, [SSA] will consider the acceptable medical source to be a nontreating source." *Id.*

In this case, the ALJ identified Dr. Lineham as one of several "treating and examining sources." Docket Item 8 at 33. But if the ALJ had not addressed whether Dr. Lineham was a "treating source" under § 404.1527(a)(2), the Court would presume he was because the Court could not "confidently say that no reasonable ALJ considering [the] record and following the proper analysis could have resolved the matter in any other way." *Garcia v. Barnhart*, 188 F. App'x 760, 763 (10th Cir. 2006). Gaspar's relationship with Dr. Linehan is not in the category where there clearly was no treating source relationship—a category that includes cases where a physician saw a claimant only twice several years apart, *see Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003), and "a plethora of decisions unanimously hold[ing] that a single visit does not constitute an ongoing treatment relationship," *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506 (6th Cir. 2006).

A psychologist may be a treating source because "'[a]cceptable medical sources' are . . . defined (by regulation) as [including] licensed . . . psychologists." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (quoting 20 C.F.R. § 416.913(a) (as in effect at the time of Gaspar's hearing)).

10

the value of the opinion." *Estrella*, 2019 WL 2273574, at *3. And as the Second Circuit very recently noted, that in and of itself is error. *Id*.

In sum, it is clear that the "substance of the treating physician rule was . . . traversed," and "a searching review of the record" does not "assure" this Court otherwise. *Id*. (quoting *Halloran*, 362 F.3d at 32). Accordingly, the case is remanded to the ALJ for reconsideration of Gaspar's claims consistent with the procedural mandates of the SSA and Second Circuit precedent.[4]

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 17, is DENIED, and Gaspar's motion for judgment on the pleadings, Docket Item 12, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: June 11, 2019
Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

---

[4] This Court need not and does not reach Gaspar's arguments that the ALJ erred in assigning weight to her other treating source opinions or that the ALJ failed to properly evaluate the physical impairments that stem from her migraines and neuropathy. Because Gaspar's "case must return to the agency either way for the reasons already given, the Commissioner will have the opportunity on remand to obviate [those] dispute[s] altogether by giving express consideration to" Gaspar's migraines and neuropathy and by fully explaining the weight given to each treating source's opinion. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 94 (2d Cir. 2019).

11